## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **BRIAN MANOOKIAN,** *et al.,* | |
| **Movants,** | **Case 1:17-mc-01172** |
| **v.** | **HEARING REQUESTED** |
| **RONALD MERVIS,** *et al.,* | |
| **Non-Movants.** | |

### RONALD MERVIS AND MERVIS DIAMOND CORPORATION'S OPPOSITION TO THE MOVANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND MOTION TO TRANSFER

Movants' (collectively, "Manookian") motion to compel the production of documents and to transfer this matter to the Eastern District of Texas misstates the facts, makes little effort to address the objections Mervis Diamond Corporation ("Mervis Diamond") actually made to Manookian's document requests, and fails to demonstrate the exceptional circumstances that are necessary to divest this Court of its jurisdiction.

Worse, Manookian's motion peddles a blatant falsehood; claiming that Mervis Diamond has "indicated they will designate an entire deposition of [Mervis Diamond] and/or Ronald [Mervis] as 'attorneys eyes only' in an attempt to keep Movants from participating in that deposition." *See* Br. at p. 6, fn. 3; *see also* Br. at p. 10.  No such thing ever happened.  Not once.[1]

---

[1] Notably, Manookian fails to attach any exhibit demonstrating Mervis Diamond's counsel ever making such a claim.  That is because Manookian's counsel knows their representation to this Court is false.  Yet, they filed their brief making this spurious claim regardless.

The motion should be denied in its entirety.

## PROCEDURAL BACKGROUND

Despite Manookian's efforts to mislead the Court and muddy the waters, the only subject that is properly before the Court is a single subpoena served on Mervis Diamond's registered agent on February 23, 2017.[2]  Pursuant to Federal Rule 45(d)(2)(B), Mervis Diamond provided Manookian's counsel with objections five days later.  For the next *ten weeks*, Manookian's counsel made no effort to communicate with Mervis Diamond's counsel regarding the objections.

Manookian falsely claims that "MDC filed objections in the District of Maryland on February 28, 2017" (*see* Br. at p. 4) and attaches the alleged objections as his Exhibit D.  In reality, objections were not filed in any court; Mervis Diamond e-mailed objections to Manookian's counsel on February 28, 2017.  Those objections are not what Manookian attaches as his Exhibit D.  The actual objections Mervis Diamond e-mailed to Manookian's counsel on February 28, 2017 are attached as Exhibit 1.

Ten weeks after Mervis Diamond provided those objections, counsel for Mervis Diamond received a phone call from one of Manookian's counsel –

---

[2] Manookian inexplicably includes Ronald Mervis as a party to this motion even though Manookian never served Ronald Mervis with anything.  As for Manookian's claim that Ronald Mervis allegedly evaded service, the reality is that Ronald Mervis was hospitalized nearly the entire time Manookian was attempting to serve him.

Christina Carroll ("Carroll").  Carroll claimed the call was an effort to satisfy the obligation to meet and confer before filing a motion.  When counsel for Mervis Diamond began the discussion by inquiring whether Carroll was willing to withdraw a number of the subpoena's procedurally improper instructions, Carroll responded that she was "not authorized" to do so.

In a subsequent e-mail, Carroll reversed course and agreed to withdraw the improper instructions.  Carroll e-mailed again to say she "would be happy to provide you an even narrower subpoena..."  The entire e-mail exchange between counsel for Mervis Diamond and counsel for Manookian regarding the subpoena is attached as Exhibit 2.

In response to Carroll's offer, counsel for Mervis Diamond responded: "What I suggest is you provide me a revised version of the entire document production (Exhibit A) that reflects all of the narrowing and/or changes you are willing to do and we can discuss from there."  *See* Ex. 2.  At that point, another of Manookian's counsel, Andres Correa ("Correa"), took over the negotiations.  Correa rescinded Carroll's offer, claimed Manookian had "already narrowed the requests" and stated that he was unwilling to do anything further.  *Id.*

Counsel for Mervis Diamond again urged counsel for Manookian to narrow the document requests; counsel for Mervis Diamond also provided precise reasons why the requests were overly broad and unduly burdensome.  *Id.*  Correa, however, refused to negotiate and refused to provide the "even

3

narrower subpoena" that his co-counsel had just hours earlier claimed she "would be happy to provide."  Correa's position: "Here is my proposed narrowing: every instruction except the last is gone.  Just follow the rules of civil procedure.  The requests themselves remain the same." *Id.*[3]  Needless to say, such an effort does not represent the type of genuine, good-faith effort to narrow the areas of disagreement required by the rules of this Court.  *See* LCvR 7(m).

### ARGUMENT

#### A.    MERVIS DIAMONDS' OBJECTIONS ARE PROPER.

#### Requests 1-5

Taken collectively, document requests 1 through 5 demand that Mervis Diamond produce "any and all communications" – *regarding any topic* – that anyone associated with Mervis Diamond has had with anyone associated with The Diamond Consortium, LLC ("Diamond Doctor") at any time from January 1, 2015 to the present.  Manookian's subpoena makes absolutely no effort to limit the scope of this subpoena to any particular subject relevant to the underlying litigation.  In short, it is a request to go on a fishing expedition.

As demonstrated in Exhibit 2, counsel for Mervis urged counsel for

---

[3] In the "Certificate of Conference" attached to their motion, Manookian's counsel claims that, on May 9th, they "withdrew objected-to instructions *and narrowed the subpoena even further in good faith...*" (emphasis added).  As shown by Correa's insistence in Exhibit 2 that "[t]he requests themselves remain the same," the "Certificate of Conference" is demonstrably  false.

Manookian to tailor the requests "to the relevant issues in the litigation."
Counsel for Manookian flatly refused to even engage in such a discussion.

Regardless, Mervis Diamond has already voluntarily produced all of the
communications that Mervis Diamond had with Diamond Doctor, that Mervis
Diamond could locate, that are arguably relevant to: (1) Mervis Diamond's
experiences dealing with Manookian; and (2) any controversy over allegedly
"over graded" diamonds.  Nothing else is relevant to Manookian's case and he is
not entitled to anything more.

**Request 6**

Manookian document request number 6 demands that Mervis Diamond
produce all e-mails it has sent or received – with anyone, including Mervis
Diamond's counsel – that contain, among others, any of the following names:
(1) Cummings Manookian; (2) Manookian; (3) Brian Manookian; (4) Brian
Cummings; (5) Hammervold; (6) Boaz; and (7) Boaz Ramon.  Like requests 1-5,
document request 6 also makes no effort to limit the scope of the request to
issues actually relevant to the underlying litigation.

From the end of 2015 until the beginning of 2017, Mervis Diamond was a
defendant in two cases where the plaintiffs were originally represented by the
law firm of Cummings Manookian.  Those plaintiffs were later represented by
Mark Hammervold.  Boaz Ramon acted as an agent of Manookian and,
consequently, also played a role in the dispute that led to the litigation.

5

Consequently, a Mervis Diamond search on names such as Hammervold, Manookian and Ramon would likely generate a hundred or more hits – all, or nearly all, of which would likely be communications between Mervis Diamond and its counsel discussing the litigation.  As a result, Mervis Diamond would be required to pay its counsel to review an extraordinary amount of obviously privileged communications and spend hours preparing a lengthy privilege log.

Federal Rule 26(c) empowers a court to limit the scope of any discovery request as may be necessary to protect any party from "undue burden or expense."  This is precisely the type of situation where just such a common sense application of Rule 26(c) is warranted – especially given that Mervis Diamond is a non-party.

As demonstrated in Exhibit 2, counsel for Mervis Diamond urged counsel for Manookian to narrow the request to expressly exclude Mervis Diamond's communications with its counsel.  While these communications would likely be privileged anyway, expressly excluding counsel from the document request would eliminate the timely and costly exercise of preparing a privilege log that would contain scores of documents.  Counsel for Manookian refused to even engage in such a discussion.

### Request 7

Document request 7 demands any communication Mervis Diamond has ever had with any customer regarding a diamond graded by EGL-International.

The request is unlimited as to time, virtually unlimited as to scope and nothing more than an effort by Manookian to search for potential clients to sue Mervis Diamond.  Indeed, to understand Manookian's actual motivation, it is important that this Court see the lengths Manookian went to unsuccessfully harass Mervis Diamonds into making outsized settlements of the two cases Manookian later handed off to Hammervold.  Just a sample of Manookian's unseemly tactics are demonstrated by Exhibits 3 through 8.[4]

Mervis Diamond is not a party to the underlying litigation.  Consequently, Manookian does not, and cannot, argue that Mervis Diamond's sale of *any* diamond graded by EGL-International is at issue in the underlying litigation between Manookian and Diamond Doctor.  Any communications *Mervis Diamond* had with any of its customers regarding diamonds sold by *Mervis Diamond* is completely irrelevant to litigation between Manookian and *Diamond Doctor.*

Notably, Manookian's motion makes no effort to explain the possible relevance of this particular request.  Indeed, the short section of Manookian's brief that quickly touches on relevance only discusses the alleged relevance of

---

[4]  Manookian demanded $100,000.00 to settle a case regarding a diamond that his client had purchased for $22,302.00.  Incredibly, Manookian demanded $200,000.00 to settle a case concerning a diamond his client had purchased for $15,400.00.  Worse, Manookian threatened to continue his malicious smear campaign against Mervis Diamond unless these outrageous demands were met.  In short, Manookian demanded money from Mervis Diamond *in order to stop Manookian from trolling for other clients.*

Mervis Diamond's communications with Diamond Doctor.  Given that
Manookian utterly fails to explain the relevance of Mervis Diamonds' past sales
to its own customers, this Court should not feel obliged to craft an argument
for him.

In addition to requesting irrelevant documents, document request 7 is
extraordinarily broad and unduly burdensome.  For starters, the request is
unlimited as to time.  Mervis Diamond has been in business for 37 years and
sells thousands of diamonds every year.  Over the course of those 37 years,
Mervis Diamond has likely sold more than a thousand diamonds that were
accompanied by a grading certificate issued by EGL-International.  The
unlimited request for "all correspondence" Mervis Diamond has had with any
customer regarding any such diamond would require the production of
communications of every communication with untold numbers of customers –
nearly every one of which was satisfied with their purchase.

Additionally, the vastness of Manookian's request presents an unduly
burdensome logistical challenge.  Mervis Diamond's communications with its
customer are typically about diamonds, in general, and not specific to EGL-
International or any other grading organization.  Consequently, to comply with
the request as written, Mervis would have to: (1) examine every communication
it has ever had with any customer about any diamond; (2) go back through its
sales records to match that customer to a particular diamond; and (3) attempt

to locate records that may show whether that particular diamond happened to be graded by EGL-International.  This would require a herculean effort – if it is even possible at all – to sift through tens of thousands of sales records and consume countless hours.

Once again, counsel for Mervis Diamond tried, to no avail, to get Manookian to narrow this request, offering: "If, for example, the request was limited to customer complaints specifically about EGL diamonds, and limited to a reasonable time, that would likely resolve the overbreadth issue."  *See* Ex. 2. True to form, Manookian refused to engage in such a discussion.  Such a narrowing, however, still would not resolve the fundamental relevance problem. In short, document request 7 is flawed beyond repair.

### B.   THERE ARE NO EXCEPTIONAL CIRCUMSTANCES THAT WOULD JUSTIFY A TRANSFER OF THIS MOTION.

"Absent the consent of the parties, the Court must find exceptional circumstances in order to transfer the subpoena-related motions to the issuing court."  *Google, Inc. v. Digital Citizens Alliance*, 2015 U.S. Dist Lexis 103156, *6 (D. D.C. 2015).  The 2013 Advisory Committee Note plainly states that "the proponent of transfer bears the burden of showing that such circumstances are present."

"There is a presumption that subpoena-related disputes be litigated in the district designated for compliance."  *FDIC v. Galan-Alvarez*, 2015 U.S. Dist. Lexis 130545, *8 (D. D.C. 2015).  Consistent with this, the 2013 Advisory

9

Committee Note instructs that "it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions."

The issue presented regarding the subpoena here do not present any issues unique or peculiar to the Diamond Doctor litigation.  This Court is certainly capable of assessing whether Manookian's counsel made a good faith effort to narrow the issues in dispute before filing this motion.  Likewise, this Court does need any special insight to see that document requests 1-5 improperly seek every communication between anyone associated with Mervis Diamond and anyone associated with Diamond Doctor without making any effort to limit the requests to subjects relevant to the litigation.  The undue burden and expense document requests 6 and 7 would cause are plainly evident on their face – this Court does not need to know anything about the Diamond Doctor case to see that.

Manookian's argument for transfer does little more than argue that the Diamond Doctor case is pending in another District.  If that was all that was required to obtain a transfer, Rule 45(f)'s requirement of "exceptional circumstances" would be meaningless.

Manookian baldly argues there is some risk of inconsistent rulings if this motion is not transferred.  He cites no actual rulings by the Eastern District of Texas to support this premise.  Manookian fails to identify a single occasion when the Eastern District of Texas has considered the propriety of document

requests such as 6 and 7 on any third party – much less held that such a request was proper.  Manookian likewise fails to identify any time the Eastern District of Texas has upheld requests for all communications – regardless of the topic – between Diamond Doctor and any third party.

Lastly, any argument that the approaching close of discovery or impending trial date weigh in favor of transfer is a red herring.  Manookian's counsel waited *ten weeks* before making any response to Mervis Diamond's objections. Had there truly been any urgency, Manookian's counsel would not have sat on their collective hands for two and a half months.  Their lack of diligence does not create an emergency for this Court or any other.

Respectfully submitted,

**FRIEDLANDER MISLER, PLLC**

By: /s/ *Thomas F. Murphy*
Thomas F. Murphy, Esq., DC Bar 464475
Lindsay A. Thompson, Esq., DC Bar 995814
5335 Wisconsin Avenue, N.W.
Suite 600
Washington, DC  20015
(202) 872-0800
*Counsel for Mervis Diamond Corporation and Ronald Mervis*

11

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on May 25, 2017, a copy of the foregoing, was sent via

first-class mail, postage prepaid to:

Andres Correa, Esq.
Christopher Schwegmann, Esq.
Christina M. Carroll, Esq.
Lynn Pinker Cox & Hurst, LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201

Daniel S. Ward, Esq.
Ward & Berry, PLLC
2020 N Street, N.W.
Washington, D.C. 20036

Bruce W. Steckler, Esq.
Stuart Cochran, Esq.
Stefani S. Eisenstat, Esq.
Steckler Gresham Cochran
12720 Hillcrest Road, Suite 1045
Dallas, Texas 75230

Randy Johnston, Esq.
Johnston Tobey Baruch, PC
3308 Oak Grove Avenue
Dallas, Texas 75204

Roger Sanders, Esq.
Sanders, O'Hanlon, Motely,
Young & Gallardo, PLLC
111 S. Travis Street
Sherman, Texas 75090

Braden M Wayne, Esq.
SettlePou
3333Lee Parkway, 8th Floor
Dallas, Texas 75219

Howard J. Klatsky, Esq.
Fee, Smith, Sharp & Vitullo, LLP
Three Galleria Tower
13155 Noel Road, Suite 1000
Dallas, Texas 75240-5019

*/s/ Thomas F. Murphy*
Thomas F. Murphy